UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
RASAQ OPEYEMI SANUSI,

                            Plaintiff,

        - against -


DEPARTMENT OF HOMELAND
SECURITY et al.,
                           Defendants.
----------------------------------------------------X

06 CV 2929 (SJ) (JMA)

<u>ORDER ADOPTING
REPORT AND
RECOMMENDAITON</u>

A P P E A R A N C E S:

HUGHES HUBBARD & REED LLP.
One Battery Park Plaza, 12th Floor
New York, NY 10004
By:  Theodore V.H. Mayer
      William Joseph Beausoleil
      Windy B. McCracken
*Attorneys for Plaintiff*

UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK
271 Cadman Plaza East
Brooklyn, NY 11201
By:  Zachary C. Cunha
      Dione M. Ena
      Scott Dunn
*Attorneys for Defendants*
Department of Homeland Security and
Immigration & Customs Enforcement

AHMUTY, DEMEERS & McMANUS
200 Iu Willets Road
Albertson, NY 11507
By:   Frank J. Pecorelli, Jr.
*Attorneys for Defendants*
Wackenhut Corp. and the GEO Corp., Inc

SIMON & PARTNERS, LLP
The French Building

551 5th Avenue
New York, NY 10176
By: Brian David Waller
*Attorneys for Defendant*
Corrections Corporation of America, Inc.

JOHNSON, Senior District Judge:

Presently before the Court is a Report and Recommendation ("Report") filed on December 1, 2010 by Magistrate Judge Joan M. Azrack, pursuant to 28 U.S.C. § 636(b). (Dkt. No. 87.) Familiarity therewith is assumed. The Report addresses two motions by Plaintiff Rasaq Opeyemi Sanusi ("Plaintiff" or "Sanusi") seeking leave: (1) to file a Second Amended Complaint (the "Proposed Complaint" or "Proposed Compl.") more than four years after the start of this action; and (2) to serve the named individual defendants that Plaintiff failed to serve in that four-year time period. (Dkt. No. 62.) The Report also addresses a motion to dismiss pursuant to Rule 12(b)(6) filed by the federal government agencies named as defendants ("Federal Agency Defendants"). (Dkt. No. 71.)

The Report recommends that the Court grant in part and deny in part Sanusi's motion to amend his complaint, and that the Court grant the Federal Agency Defendants' motion to dismiss. In particular, the Report notes that the Proposed Complaint significantly streamlines the operative complaint and thus promotes judicial economy, and would not unduly prejudice defendants as the action is still effectively in its early stages. (Report at 11–12.) The Report determines, however, that the bulk of the eleven claims (the "Proposed Claims") in the Proposed Complaint are time-barred and/or legally insufficient under Rule 12(b)(6), thus

having no hope of surviving a subsequent motion to dismiss. Consequently, the Report recommends that the Court deny Plaintiff's motion to amend with respect to all but three of his eleven Proposed Claims, and with respect to those three claims, to grant them only in part. The parties timely filed objections to the Report. (Dkt. Nos. 88-90.)

This Court reviews those portions of a report and recommendation to which a party has timely objected under a <u>de novo</u> standard of review. <u>See</u> 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A <u>de novo</u> review determination entails an independent review of all objections and responses to the magistrate's findings and recommendations. <u>See</u>, e.g., <u>United States v. Tortora</u>, 30 F.3d 334, 337 (2d Cir. 1994); <u>cf. Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.</u>, 973 F.2d 1033, 1045 (2d Cir. 1992). On <u>de novo</u> review, a district court, however, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. <u>See</u>, e.g., <u>Paddington Partners v. Bouchard</u>, 34 F. 3d 1132, 1137–38 (2d Cir. 1994); <u>Kaminski v. City of Utica</u>, 2012 U.S. Dist. LEXIS 139261, at *3-4 (N.D.N.Y. Sept. 26, 2012) (<u>citing Calderon v. Wheeler</u>, 2009 U.S. Dist. LEXIS 64935 (N.D.N.Y. July 28, 2009)). In the case at bar, after conducting a <u>de novo</u> review of the Report, the Court concludes that Magistrate Azrack's Report should be approved and adopted, as modified below, for the reasons that follow.

Accordingly, it is hereby ORDERED that the Federal Individual Defendants'

Motion to Dismiss is GRANTED; and Plaintiff's motion to file a Second Amended Complaint is GRANTED in part and DENIED in part.

## BACKGROUND

1.        Procedural History

The procedural history of this case is a tortured one and bears summarizing here.

Plaintiff is a native and citizen of Nigeria.  On October 16, 1997, Plaintiff attempted to enter the United States using a fraudulent British passport.  He was denied admission, detained, and then processed for expedited removal.  Plaintiff later established a credible fear that he would be persecuted if returned to Nigeria, and was thus granted permission to pursue an asylum claim.  On March 23, 1998, after an adverse credibility determination and his failure to present supporting documentation, Plaintiff's asylum application was denied and he was issued a final order of deportation.  Plaintiff then applied for relief from deportation pursuant to the United Nations Convention Against Torture, 1465 U.N.T.S. § 85; 8 C.F.R. § 108.16 (regulations implementing the Convention).  On March 16, 2000, an Immigration Judge ("IJ") denied his application under the Convention.  The Board of Immigration Appeals ("BIA") upheld denial of the application on February 26, 2001; after various appeals and motions for reconsideration, the Second Circuit affirmed the BIA's determination on April 18, 2006.  Sanusi v. Gonzales, 445 F.3d 193 (2d Cir. 2006).

While awaiting the ultimate resolution of these matters, Plaintiff was continuously detained in various detention centers.

In 2003, with his appeal for relief from removal still pending in the Second Circuit, Plaintiff filed a pro se petition for a writ of habeas corpus in this Court, challenging his then six year detention and the conditions of his confinement. The Court denied Plaintiff's petition. Sanusi v. INS, No. 03-cv-193, 2003 WL 21696945 (E.D.N.Y. July 15, 2003), aff'd in part, vacated in part, and remanded, 100 F. App'x 49 (2d Cir. 2004) (summary order). In affirming this Court's ruling in part, the Second Circuit held that Plaintiff's prolonged detention did not violate due process because it had "been prolonged primarily by [Plaintiff's] pursuit of final judicial review of his claims." Sanusi, 100 F. App'x at 51. To the extent that Plaintiff's claims were based on the conditions of his confinement, the Second Circuit remanded with instructions that Plaintiff be allowed the opportunity to re-plead on the grounds that he was proceeding pro se, and with the expectation that this Court would consider the appointment of counsel for Plaintiff (given the complexity of his challenge to the conditions of his confinement). See id. at 52. Following this partial remand, Sanusi's 2003 petition for a writ of habeas corpus morphed into the present action.

2.        The 2006 Amended Complaint

Predicated on the allegations in his habeas petition, Plaintiff filed the initial complaint in this action with the assistance of pro bono counsel on June 12, 2006.

(Dkt. No. 1.)  The complaint was later amended as a matter of right on September 26, 2006 (the "Amended Complaint"). (Dkt. No. 6.)[1]  Notwithstanding the Second Circuit's limited remand, the Amended Complaint asserted claims predicated on the conditions of Plaintiff's confinement as well as the length of his detention, which the Second Circuit had already held to be constitutional.

The Amended Complaint asserts twenty-one causes of action against eighteen defendants who may be categorized into four different groups of entities and individuals: (1) the Department of Homeland Security and the United States Immigration and Customs Enforcement ("ICE") (together, the "Federal Agency Defendants"); (2) three individually named ICE immigration officers, Officers Torres, Regis, and Cozine (the "Federal Individual Defendants" or "ICE Officers," and, collectively with the Federal Agency Defendants: the "Federal Defendants"); (3) the private operators of the three separate detention centers in which Plaintiff was held during the relevant period—the Wackenhut Corporation, the GEO Corp., and the Corrections Corporation of America ("CCA") (together "the Corporation Defendants"); and (4) named and unnamed employees of the Corporation Defendants, including three wardens of these centers, named defendants "Janecka," "Easterling," and "Collins" (together the "Warden Defendants," and collectively with

---

1       Unlike the 2003 habeas petition, Plaintiff had the benefit of counsel for his 2006 complaint and was represented by counsel from June 2006 through April 1, 2008.  (Report at 5, 7.) Additionally, with the present action pending, Plaintiff later filed a second habeas petition in the U.S. District Court for the District in New Jersey on January 9, 2007.  On October 31, 2007, the District of New Jersey granted Plaintiff's habeas petition, and Plaintiff was ultimately released on November 9, 2007, subject to a location and conditions of supervision plan.  Sanusi v. Chertoff, No. 07–16 WJM, 2008 WL 1995141, at *3–4 (D.N.J. May 6, 2008).  Thus, Plaintiff is not presently in custody.

the Corporation Defendants: the "Private Defendants"). And, as the Second Circuit expressly contemplated in its ruling on Plaintiff's 2003 habeas petition, the Amended Complaint asserts Bivens claims against both government and private actors, as well as claims under the Alien Tort Claims Act, 28 U.S.C. § 1350, and the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb et seq.

On October 12, 2006, the Federal Defendants informed Plaintiff that they had not been properly served and apprised him that the 120-day deadline for service of process pursuant to Rule 4(m) of the Federal Rules of Civil Procedure had long expired. (Dkt. No. 7.) On March 17, 2009, the Federal Defendants moved to dismiss the Amended Complaint as to the Federal Agency Defendants for lack of personal and subject matter jurisdiction, contending that Plaintiff had failed to effect proper service of process and that the agencies had not, in any event, waived their sovereign immunity from Plaintiff's constitutional tort claims. (Dkt. No. 26.) On October 27, 2009, Plaintiff voluntarily dismissed the complaint against the Federal Agency Defendants, but not against the Federal Individual Defendants. (Dkt. No. 39.) On March 19, 2010, Plaintiff then moved for an extension of time to file and serve both the Federal Individual Defendants and the Private Defendants whom he had failed to serve properly, as well as for leave to amend the Amended Complaint pursuant Rule 15(a)(2) and to serve said amendment or the Proposed Complaint. (Dkt. No. 62.) Defendants all opposed Sanusi's applications. (Dkt. Nos. 66, 68, 71.) Additionally, the Federal Individual Defendants moved and were granted leave to

file a motion to dismiss pursuant to Rule 12(b)(6).  (Dkt. No. 71.)

3.    The 2010 Proposed Complaint

Similar to the Amended Complaint, Plaintiff's Proposed Complaint is predicated on both the length of his detention as well as the conditions of his confinement.  But where the Amended Complaint alleges twenty-one claims against eighteen defendants, the Proposed Complaint significantly streamlines the claims to eleven claims against nine defendants.

a.    *Bivens Claims Against the ICE Officer Defendants*

The first three Proposed Claims assert Bivens claims against the ICE Officer Defendants (Proposed Compl. ¶¶ 23, 26–28, 30, 39–53, 59–60, 126, 128, 131, 132, 134 (Dkt. No. 64).)  The Proposed First Claim alleges that these defendants violated Plaintiff's Fifth Amendment right to procedural due process because they failed to conduct meaningful custody reviews into whether there was any legitimate justification for his continued detention during the roughly decade-long period that Plaintiff spent in immigration custody.   The Proposed Second Claim asserts a substantive due process claim alleging that the ICE Officer Defendants unlawfully retaliated against Plaintiff after he exercised his right to appeal his removal.  Finally, the Proposed Third Claim also asserts a substantive due process violation, alleging that these defendants: (1) ignored Plaintiff's repeated complaints concerning the conditions of his confinement; and (2) failed to inspect and deal with said conditions. With respect to this Proposed Third Claim, Plaintiff invokes INS/ICE internal

guidelines and standards that provide that immigration detainees should be held in non-punitive conditions, and he alleges that, in fact, he suffered in punitive conditions including, among other things, stuffy, filthy, and cramped holding cells where as many as forty men were forced to stay for 22–23 hours a day; wet beds; insufficient clothing and blankets; meals that provided food past its expiration date, inadequate food, and undrinkable water; lack of proper medical care, and midnight fire drills.  (Proposed Compl. ¶¶ 17, 24–25, 94–95, 99-112, 139–143 (Dkt. No. 64).)

b.      *Bivens Claims Against the Warden Defendants*

Additionally, the Proposed Complaint asserts one Bivens claim against the Warden Defendants.  Specifically, the Proposed Fourth Claim alleges that these defendants violated Sanusi's substantive due process rights because they were aware and responsible for the deplorable conditions of his detention.

c.      *Tort Claims against the Private Defendants*

Finally, the balance of the Proposed Complaint (Proposed Fifth through Eleventh Claims) asserts state-law tort claims against the Private Defendants, including claims based in negligence, intentional infliction of emotional distress, conversion, and unjust enrichment.

**DISCUSSION**

Structurally, because the Report recommends denying multiple proposed claims on the same grounds, the Court addresses the parties' objections to the Report

on a grounds-for-denial basis, rather than on a claim-by-claim basis. Part 1 addresses Plaintiff's objections, and Part 2 addresses Defendants GEO and Wackenhut's objections.

1.      Sanusi's Objections

      a.      *The Report Correctly Declined to Apply the Continuing Violations Doctrine to Toll Sanusi's* <u>Bivens</u> *Claims*

The Report recommends dismissing all of Plaintiff's Proposed <u>Bivens</u> claims (Proposed First, Second, Third, and Fourth Claims) on statute of limitations grounds, finding that those claims are time-barred under the governing three-year statute of limitations period. In the Report, the Magistrate declined to apply the continuing violations doctrine or the relation-back doctrine to extend the limitations period. Plaintiff has objected to the Report's conclusion that his <u>Bivens</u> claims are untimely and contends that the Magistrate's refusal to apply the continuous violations doctrine was in error. (<u>See</u> Report at 15–16.)

Typically employed in Title VII employment discrimination litigation, under the continuing violations doctrine, the statute of limitations is tolled "until the last discriminatory act in furtherance of . . . a continuing discriminatory practice or policy." <u>Harris v. City of New York</u>, 186 F.3d 243, 248 (2d Cir. 1999) (internal citations and quotations omitted). Thus, "where there is proof of specific ongoing discriminatory policies or practice . . . the accrual time for the statute of limitations may be delayed until the last act in furtherance of [the policy], <u>Cornwell v. Robinson</u>, 23 F.3d 694, 703–04 (2d Cir. 1994) ((internal citations omitted) (delay of accrual

when injury results from a continuing practice and policy of discrimination), or until "the last asserted occurrence of that practice," Havens Realty Corp. v. Coleman, 455 U.S. 363, 380–81 (1982).

The Second Circuit has yet to squarely address the applicability of the continuing violations doctrine to Bivens claims or even whether the doctrine applies to analogous civil rights actions brought under 42 U.S.C. § 1983, other than those involving allegations of discrimination. See Cotz v. Matroeni, 476 F. Supp. 2d 332, 356 (S.D.N.Y. 2007) ("Courts in the Second Circuit view continuing violations arguments with disfavor, and the doctrine's applicability outside of the Title VII or discrimination context is uncertain."); Trinidad v. New York City Dep't of Corr., 423 F. Supp. 2d 151, 165 (S.D.N.Y. 2006) ("As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."). In the absence of Second Circuit guidance, as the Report notes, district courts in this circuit generally disfavor the expansion of the doctrine. See generally Koehl v. Greene, No. 06-cv-0478, 2007 WL 2846905, at *7–9 (N.D.N.Y. Sept. 26, 2007) (collecting cases).

To rely on the continuous violation doctrine a plaintiff must allege: (1) both the existence of an ongoing unlawful policy, and (2) some non-time barred acts taken in furtherance of that unlawful policy. Harris, 186 F.3d at 250. Here, even assuming arguendo that Plaintiff could extend the continuing violation doctrine to Bivens

claims, Plaintiff has simply failed to demonstrate that the facts here could withstand this two-prong inquiry.

(i)     Ongoing Unlawful Policy

First, with respect to the unlawful-policy prong, the alleged acts and omissions of the Federal Individual Defendants (e.g., the failure of the ICE Officer Defendants to conduct regular custody reviews) and/or the failure of the Warden Defendants (to remedy the deplorable detention conditions) do not, for the reasons stated in the Report, rise to the level of an ongoing violation of Plaintiff's constitutional rights. See generally Joseph v. Hogan, 561 F. Supp. 2d 280, 313–15 (E.D.N.Y. 2008) (internal citation and quotations marks omitted). In Joseph, advocacy groups for individuals with mental illnesses alleged that thousands of New York residents with mental illnesses were languishing for years in nursing homes in part because New York State violated federal regulations that required pre-admission screening and resident-review evaluations to determine whether an individual required nursing-home-level care. The district court declined to apply the continuous violation doctrine on the ground that allegations of the lack of mandated reviews and evaluations were "each discrete, actionable offenses," for which the plaintiffs had separate claims for each alleged failure to conduct the required review and evaluation. Id. Similarly, here, even assuming that any alleged failure to conduct regular custody reviews and/or to remedy the conditions of confinement violated some federal right, Plaintiff's Proposed Complaint simply fails to plead the "ongoing

custom or unlawful policy" required for the continuing violation doctrine to apply.

(ii)     <u>Non-Time-Barred Acts in Furtherance of Unlawful Policy</u>

Second, with respect to the requisite non-time-barred-claims prong of the doctrine, the Court adopts the Report's conclusion that Plaintiff does not plead sufficient facts establishing the defendants' personal involvement. The Second Circuit has held that in order to meet this second prong of the doctrine, "plaintiff must be able to allege [personal involvement] as to each named defendant." <u>See Pratts v. Coombe</u>, 59 F. App'x 392, 395 (2d Cir. 2003) (summary order) (noting that, in order to plead non-time barred acts, plaintiff "must be able to allege as to each named defendant, facts evidencing deliberate indifference"). Plaintiff only broadly contends that defendants were responsible for the length and conditions of his confinement. However, Plaintiff altogether fails to specifically allege which defendant was responsible for the non-time-barred act(s) at issue. Accordingly, Plaintiff fails to satisfy the second prong of the continuous violation doctrine.

(iii)     <u>Additional Considerations</u>

Finally, the Court notes that the present action does not present any of the "compelling circumstances" that would otherwise warrant the application of the continuous violation doctrine. <u>Koehl,</u> 2007 WL 2846905, at *9–10 (explaining that some of these compelling circumstances include, for example, difficulty "pinpoint[ing] the exact day the violation occurred; where there is an express, openly espoused policy that is purportedly discriminatory; or where there is a pattern of

covert conduct such that the plaintiff only belatedly recognizes its unlawfulness"). The circumstances here, in contrast, including Plaintiff's failure to timely serve the individual defendants, militate against an expansion of the continuous violation doctrine to save Plaintiff's time-barred Bivens claims.

Having considered Plaintiff's objections, the Court finds no error in the Report's conclusion that Plaintiff's proposed Bivens claims (Proposed First, Second, Third, and Fourth Claims) are barred by the statute of limitations. Accordingly the Court adopts the Report's recommendation to deny Plaintiff's proposed Bivens Claims, as modified by the discussion herein. For the same reasons, the Court also affirms and adopts the Report's analysis and recommendation concerning Plaintiff's proposed state law claims (Proposed Fifth, Sixth, Seventh, and Tenth Claims).

> b.      *The Report's Conclusion that Plaintiff's Bivens Claims Cannot Withstand a Motion To Dismiss is not Erroneous*

The Report concludes that Plaintiff's Bivens claims against ICE and Warden Defendants—both the procedural due process claims against ICE Defendants for their purported failure to conduct meaningful custody reviews as well as the substantive due process claims relating to the conditions of Plaintiff's confinement— cannot withstand a motion to dismiss because Plaintiff cannot establish a constitutional violation and the personal involvement of defendants.

With respect to the Bivens claims predicated on the lack of meaningful custody reviews, Plaintiff's Proposed First Claim, the Report finds that Plaintiff's allegations are legally insufficient for a Bivens claim, which requires allegations of

both (1) a constitutional violation, and (2) a defendant's personal involvement.  See Ashcroft v. Iqbal, 129 U.S. 1937, 1948 (2009); see also Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006).  Magistrate Azrack reasoned that Plaintiff's use of a fraudulent passport justified his initial detention at the border, pursuant to which he was properly categorized as an "inadmissible" or "excludable" alien—a category of aliens who are not entitled to the full protections of the Constitution or the Due Process Clause therein under the governing "entry fiction" doctrine.  Moreover, under immigration law Plaintiff did not have a constitutional right to parole within the United States pending his various appeals of his deportation order; in any event, his prolonged detention was directly attributable to his own efforts in appealing his final deportation order.  Thus, with respect to the constitutional violation prong of a Bivens claim, the Report concluded that Plaintiff could not establish a constitutional—or even statutory—right to meaningful custody reviews, and noted that Plaintiff had at least five reviews between 1999 and 2002.  With respect to the personal involvement prong of a Bivens claim, Magistrate Azrack found that the Proposed Complaint failed to plead not simply which of the ICE Officer Defendants conducted the reviews that Plaintiff did receive, but also which of these defendants were supposed to (but failed to) conduct such reviews.  (See R&R at 14–24.)

Plaintiff lodges three objections to this portion of the Report.  First, he contends that the Report improperly relied on the "entry fiction" doctrine, because under the force of that logic the summary execution of inadmissible aliens would be

permissible, which many courts of appeal have found untenable. (<u>See</u> Pl.'s Objection (Dkt. No. 89) at 6 (<u>citing</u> <u>Rosales-Garcia v. Holland</u>, 322 F.3d 386, 410 (6th Cir. 2003)). Second, Plaintiff argues that contrary to the Magistrate's reasoning, the United States Constitution is the proper starting point or outer limit for an exploration of an immigration detainee's due process rights regardless of his precise immigration status as an inadmissible alien. In support of this argument, Plaintiff complains that the Report incorrectly (1) relied on the discretion that immigration law affords the Attorney General with respect to the parole of such persons and argues that the Magistrate's deference to this discretion offends due process as interpreted in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001);[2] and (2) failed to give sufficient weight to the favorable habeas ruling Plaintiff obtained in the New Jersey District Court, which ruling was based in part on that court's finding that Plaintiff had a due process right to "periodic, personalized custody determinations" review of his custody status, the lack of which militated in favor of his grant of habeas. Finally, Plaintiff contends that to the extent the Report rested on the fact that he had five custody reviews, that the custody reviews he received were summary, infrequent, and otherwise defective insofar as they failed to offer any actual

---

2 In <u>Zadvydas</u>, the Supreme Court addressed the question of whether the indefinite detention of two <u>lawful</u> permanent resident aliens, who had been ordered removed because of their criminal convictions, violated due process and constituted an impermissible application of the Attorney General's statutory authority. 533 U.S. at 699. (emphasis added). It established that the detention pursuant to a removal order is presumptively reasonable for six months and, after that, if the alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and the Government cannot rebut that showing, then continued detention is improper. <u>Id.</u> at 699–701. The Supreme Court later extended this ruling to "excludable aliens," in <u>Clark v. Martinez</u>, 543 U.S. 371 (2005).

justification for his continued detention.

After a _de novo_ review of the immigration law statutes and precedent, this Court concludes that Plaintiff's objections are without merit. As an initial matter, for the reasons stated in the Report, the Magistrate properly located the discussion of Plaintiff's purported due process rights while in detention in the scheme of federal immigration statutes and regulations, as well as the case law, rather than by simple reference to the Constitution itself. Plaintiff does not dispute that as a non-citizen who initially attempted to enter this country with the use of a fraudulent passport, he properly fell within the category of aliens referred to as "inadmissible" under Section 212 of the Immigration and Nationality Act ("INA"). Nor does Plaintiff dispute that his claims for relief under both federal and international asylum law were denied after an adverse credibility finding, or that he was under a final order of deportation since at least February 2001. The continued detention of an alien who is ordered removed is expressly authorized by federal law, 8 U.S.C. § 1231. Related regulations specifically make allowance for the continued detention of such aliens pursuant to custody determinations, 8 C.F.R. § 241, and those regulations implement the statutory authorization for the Attorney General to exercise discretion in making parole determinations, 8 C.F.R. § 212.5.

Given these regulations, the Magistrate thus correctly reasoned in the Report that the only possible basis for a constitutional claim predicated on Plaintiff's prolonged detention rests on whether the ICE Officer Defendants' putative failure to

conduct adequate custody reviews could be said to have violated a constitutional

right to due process rather than purely on the prolonged nature of his detention.[3]

Similarly, Plaintiff's assertion that the Magistrate's deference to the Attorney

General's discretion offends due process as interpreted in Zadvydas, is premised on a

misreading of the Supreme Court's holding in that case. Although Zadvydas does

state that the "indefinite detention of aliens . . . would raise serious constitutional

concerns," the facts there are clearly distinguishable. Prior to its discussion of the

due process concerns of such indefinite detention, the Supreme Court specifically

states that these rights would only apply to aliens who were lawfully admitted into

the United States. See Zadvydas, 533 U.S. at 682 ("We deal here with aliens who

were admitted to the United States but subsequently ordered removed. Aliens who

have not yet gained initial admission to this country would present a very different

question. Based on our conclusion that indefinite detention of aliens in the former

---

3    The Report correctly concluded that, to the extent that Sanusi's Bivens claims (Proposed Claims
One through Four) are based on the length of his detention, such claims are subject to dismissal
under Rule 12(b)(6) and are thus properly denied on futility grounds. The weight of authority in
this Circuit holds that where a detainee's conduct in seeking judicial review of a deportation order
contributes to extending the length of time he spends in immigration custody, the continued
detention does not offend due process. See Zadvydas, 533 U.S. 678 (setting outer time limit for
detention of deportable aliens at six months where the removal was not reasonably foreseeable,
subject to certain exceptions); see also, Turkmen v. Ashcroft, 589 F.3d 542, 549–50 (2d Cir. 2009)
(affirming the district court's refusal to recognize plaintiffs' prolonged detention as a violation of
due process where plaintiffs failed to allege that during the period of their detention there was no
significant likelihood of removal in the reasonably foreseeable future and were otherwise
"lawfully detained as aliens subject to orders of removal"); Obikanye v. INS, 78 F. App'x 769, 772
(2d Cir. 2003) (summary order) (affirming the denial of a writ of habeas corpus upon a finding
that petitioner's continued detention was "only because he requested and was granted a stay of
removal"); Agoro v. ICE, No. 09cv8111(SAS), 2010 WL 9976, at *5 (S.D.N.Y. Jan. 4, 2010)
(listing cases); Sanusi v. INS, No. 03-2566, 2004 WL 1303644, at *1 (E.D.N.Y. July 22, 2003),
aff'd in part, remanded in part, Sanusi v. INS, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order)
("detention [that] has been prolonged primarily by the [noncitizen's] pursuit of final judicial
review of his claims [does not] in itself violate due process.").

category would raise serious constitutional concerns, we construe the statute to contain an implicit "reasonable time" limitation, the application of which is subject to federal-court review."). Thus, Plaintiff's claim that the Report's treatment of his claims offends due process under <u>Zadvydas</u> is without merit.

Here, as the Report noted, Plaintiff did receive five complete reviews between 1999 and 2007. (Report at 19–24.) Notwithstanding the New Jersey District Court's decision in <u>Sanusi v. Chertoff</u>, five is not an insignificant number. While the guidelines governing the timing of custody reviews as set forth in 8 C.F.R § 241.4(k) suggest that an alien ordered removed is entitled to at least an annual review, the guidelines also make clear that it is within the discretion of authorities to suspend or postpone the custody review process if such detainee's prompt removal is practicable and proper, or for other good cause. Plaintiff raises no new arguments in his objections to suggest that his removal was not practicable or proper, and he points to no binding authority that establishes that he was constitutionally entitled to a greater number of custody reviews given the discretion reflected in the statutory scheme and governing regulations. The Court accordingly affirms the Report's conclusion that Plaintiff's claim of the lack of meaningful custody review cannot be the basis for a <u>Bivens</u> claim, and adopts its recommendation denying Plaintiff's Proposed First Claim.

Concerning Plaintiff's <u>Bivens</u> claims based on the conditions of his confinement, the Court finds no error, upon a <u>de novo</u> review, in the Report's

analysis and recommendation. (Report at 25–27.) First, as the Report correctly notes, the Second Circuit has merely observed that the Fifth and Eleventh Circuits have held that unadmitted aliens/immigration detainees have a due process right to not be subjected to gross physical abuse, but the Second Circuit has yet to define what constitutes "gross physical abuse" rising to the level of a substantive due process violation. See, e.g., Arar v. Ashcroft, 532 F.3d 157, 189 (2d Cir. 2008); Correa v. Thornburgh, 901 F.2d 1166, n. 5 (2d Cir. 1990). The sum and substance of Plaintiff's allegations regarding his conditions of confinement include, inter alia, not receiving a diet consisting of low-sodium foods, not receiving the proper prescription for his reading glasses, being confined in moldy and wet cell walls, and improperly managing the temperature in his cell. Whatever the Circuit might ultimately hold, this Court cannot conclude that the detention conditions to which Plaintiff objects rise to the level of gross physical abuse. Indeed, the Report is correct to note that such conditions do not amount to gross physical abuse even pursuant to the instructive authority of the Fifth and Eleventh Circuits. See, e.g., Adras v. Nelson, 917 F.2d 1552, 1559 (11th Cir. 1990). Plaintiff's objections to this portion of the Report do not raise any new arguments. Accordingly, the Court also affirms and adopts this portion of the Report.

      c.    *The R&R Correctly Concluded that Sanusi's Intentional and Negligent Emotional Distress and Negligent Hiring Claims are Futile.*

Plaintiff similarly does not raise any new arguments in his objections to the portion of the Report that recommends dismissing his claims for intentional and

negligent infliction of emotional distress against the Corporation Defendants and the Warden Defendants (Proposed Sixth, Seventh, Eighth, and Ninth Claims).  (Report at 27–32.)  After a careful analysis of Plaintiff's tenure in the various facilities and application of the requisite state-law statutes of limitation, the Report found that the state-law claims against the Warden Defendants are untimely.  Further, the Report concluded that these claims could not be saved by the relation-back doctrine because Plaintiff failed to serve any of these defendants within the 120-day period for service required by Rule 4(m).  In his objection, Plaintiff argues that the Report improperly adds an element of evidence of unreasonable danger to his "physical safety" in analyzing the claim of negligent infliction of emotional distress.  Plaintiff cites to Perrin in support of his position, however, even in that case the court required evidence of some "emotional harm" or "mental anguish" to state a viable claim for negligent infliction of emotional distress.  Perrin v. Hilton Int'l, Inc., No. 91 Civ. 2615, 1992 WL 396221, at *4 (S.D.N.Y. Dec. 21, 1992).  Here, Plaintiff does not establish that he suffered any emotional or mental injury.  Therefore, for the reasons stated in the Report, the Court accordingly affirms and adopts the Report's recommendations with respect to the Proposed Sixth through Ninth Claims.

2.      Defendants' Objections

        The Report recommends granting Plaintiff leave to amend the First Amended Complaint to add the following proposed state-law tort claims: negligence claims against all three Corporate Defendants (Proposed Fifth Claim in part), a conversion

claim against CCA (Proposed Ninth Claim in part), and an unjust enrichment claim against all three Corporate Defendants (Proposed Eleventh Claim in part). Defendants Wackenhut and GEO object to the Report's recommendation to allow Plaintiff to add claims for negligence and unjust enrichment, arguing in part that such claims would be futile as they are time-barred under the relevant statute of limitations.

Upon de novo review the Court finds, and for the reasons stated in the Report, that the Report correctly concluded that these claims were neither time-barred nor otherwise futile pursuant to Rule 12(b)(6)'s futility arguments. (Report at 28–29 (negligence); 32–33 (conversion); 35–37 (unjust enrichment).) The relation-back doctrine operates to save the negligence claims, which are otherwise barred under the relevant applicable New York and New Jersey statutes of limitations, because those claims are based on the Plaintiff's conditions of confinement, which Plaintiff pleaded in both his original complaint and the First Amended Complaint. Plaintiff's conversion claim is based on allegations that he was forced to throw out his personal belongings. This claim is timely under the relevant New Jersey six-year state-law limitations period, and appropriate at this early stage of litigation. Finally, the Court similarly finds, and for the reasons stated in the Report, that Plaintiff correctly set forth the prima facie case for unjust enrichment under both New York and New Jersey law, and that this claim is timely under the applicable six-year limitations period. Accordingly, the Court also affirms and adopts this portion of the

Report.

## CONCLUSION

Based on the foregoing, and for the reasons set forth in the Report, Magistrate

Judge Azrack's Report is adopted in its entirety with the modifications specified

above.


SO ORDERED.

March 31, 2014                    _____/s/_____
Brooklyn, New York                    Sterling Johnson, Jr.